Good morning. Nicholas Reilly for the Secretary of Agriculture and USDA. I plan to reserve three minutes of my time for rebuttal. All right. The District Court's preliminary injunction in this case rests on two mistaken premises. First, that the advertisements of the Montana Beef Council constitute government speech rather than government speech. And second, that Montana cattle producers are compelled to subsidize those advertisements. Can I ask you a question about the record that's troubled me? The memorandum of understanding that was entered into between the Secretary and the Montana Beef Council is in the record. It was presented to the district judge. There's some argument about it below, and I know your colleague thinks it may be illegal or not binding. But the judge never addressed it, did he? He did not. The district judge, no. And if it is binding, it's quite compelling. It gives your client complete control over the message of the Montana Beef Council. So what do we do with that? Do we read it ourselves and say we find it binding and it ends the issue? Do we send it back to the district judge to tell us what he thinks about it? It's sort of an extraordinary thing because it's as if somebody is alleging illegal conduct and one guy says, all right, I promise to stop, or at least I promise not to do anything illegal anymore. And the district judge ignores that and comes up with an injunction anyway. I'm just — I'm a little puzzled about what to do with it. Tell me what you think we should do with it. Sure. It's the government's view that this Court should consider it in the first instance. And there is case law that we cite in our reply brief of other instances where when a district court has sub salientio disregarded evidence that was submitted, including evidence that was submitted after a magistrate judge's recommendations but before the district judge's final decision, that this Court can consider it in the first instance. And so we would urge the Court to do that under these circumstances. I would also just note — But just a minute before you get there, I guess I'm trying to figure out how binding it is, particularly if it prescribes requirements beyond those given in the statute. So it doesn't prescribe any requirements or give USDA any authority that USDA does not already have under the statute. Well, but just a minute, it does quite a bit different than what we have otherwise. It certainly is more specific than what the regulations in the statute say, what's in the BFAC itself. However, everything that is listed in the MOU, every mechanism of control, has a basis under authority that USDA has under the BFAC and the beef order. So to take one example — But just a minute. If I look at this MOU, the Montana Beef Council has got to submit for preapproval by the Secretary certain things. There's nothing like that now. There actually is. I would point the Court to, this is it, Title VII of the Code of Federal Regulations, Section 1260.181. This is the regulation in the beef order that deals specifically with qualified State Beef Councils. And there are provisions there. I would point specifically to subsection B, I believe it's B6. Now you're running through subsections and you're quicker than me, so say it again. Sure. It's actually the final page of the addendum, our statutory addendum. I know, but I'm looking at my iPad, so give me the site again. Sure. Go ahead. It's Section 1260.181, subsection B6. And that provision — That seems funny that that is now your argument when I didn't even see that in your brief. It seems to me that the best the Secretary can do presently is to decertify the Montana Beef Council. That is certainly part of the authority that the Secretary enjoys. I mean, at this point, while they have to send what they're going to do to the Secretary, and the Secretary can do audits, there's nothing to suggest that the Secretary can do anything more than decertify. Again, I would point the Court to that B6 provision, which allows the Secretary to request any information from a qualified State Beef Council. And we did — I'm sorry, go on. Just because they can request it. I'm giving you the best effort I can for the government. But it seems to me the Montana Beef Council, first of all, the best you can do is remove the board. The second best you can do is if they give you all the information they can give you, the best you can do after that is decertify them if you don't like it. That's quite a bit different than the other cases where there was pre-certification, pre-approval. Right. I mean, I think it's different from some of the other cases. I don't think it's different from all of the other cases. The only ones that I have in front of me are Paramount. Just a minute. I've looked — in fact, I put a chart together. I've got Paramount, I've got Delano Farms, and I've got Johans. Frankly, this more closely approximates Paramount and Delano Farms. But I don't know — there's nothing in those cases which would suggest there's anything about only decertification if you don't like what they're going to do. Right. Well, just to those cases specifically, in Delano, this Court, page 1229 of Delano, says specifically the Ketchum Act, which was the act that was at issue there, quote, does not require any type of review by the secretary over the actual messages promulgated by the commission. Now, the secretary had discretionary authority to do that, but often had not exercised the authority to actually review. And the Court explicitly noted in Delano that there was no requirement of review by the secretary. Paramount, similarly, this Court noted, and this is a quote from page 10 — 1011 in Paramount, quote, although the secretary has not rejected or edited proposals or taken a particularly active role in meetings, this passivity is not an indication that the government cannot exercise authority. Yes, but also in Delano, if you look very carefully, the secretary could appoint all the members of the board and then get rid of all the members of the board. In this particular matter, all they can do is get rid of them. Right. And getting rid of, I think, is a key factor. I mean, they're appointed by whoever. They don't have any preapproval to get the members there. They don't have any preapproval to the message that goes out. The best you got is after the fact, get rid of the board or decertify it. Just a couple of responses to that. One, they do have control at the outset because in order to be certified, the Beef Board has to certify the Beef Council in the first place, which we think is analogous to an appointment power. But the Beef Council isn't the one that takes care of what the Montana Beef Council does. The Beef Board. I'm sorry. Right. The Beef Board actually does. The Beef Board has broad oversight authority over State Beef Councils. And what do they do? Besides reviewing all the advertisements that are proposed by the Montana Beef Council, conducting audits. I mean, some of these are listed in the regulation that I alluded to earlier. There's also just, I should say, this exercise that we're engaged in of going through, you know, and picking out one particular factor from Delano and saying it's less strong here or one factor from Paramount and saying. I'm not trying to pick out one factor. I'm just trying to say when I look at this, when it seems to me that the best the Secretary's got to do with this particular situation is to decertify or remove the board, that's quite a bit different than any of these other cases. Respectfully, I don't think it is. And if I could just point the Court to in Johans itself, the Court pointed. I was going to just ask you that. So what's the control on the Federal side? What's the Secretary's control over the message? There are several. And I think it's actually useful to try and fit this through the lens at this point. Because we know the Federal side is constitutional, the Supreme Court's told us. Exactly, right. And part of the statutes, some of the very same statutes and same regulations that the Supreme Court relied on in Johans in reaching that conclusion are the exact same statutes and regulations that govern the speech of State Beef Councils. And, again, this regulation, the 1260.181 that we pointed to, specifically incorporates the very same constraints on that overarching message that the Supreme Court cited in Johans, which are specifically found. Just a minute. In Johans, and I'm just reading down through what I put, the Congress and the Secretary established the general terms of the promotions. Then the Secretary exercises final approval authority over every word used in the promotional campaign. The Secretary attends the meetings of the Beef Board. Half the Beef Board's members are appointed by the Secretary. And then the Secretary can remove all the members. If I change that to this, none of that happens. The best you got is you're going to send that stuff to the Secretary and he can audit it, but the best the Secretary's going to do is decertify. Again, I don't think that's right. Again, the analysis under the effective control test in Johans and that this Court has applied in Paramount and Delano is a holistic analysis that looks at all the various indicia of control. If we start with the statutes and the regulations setting forth the overarching message, those are identical in Johans and here, because the same constraints on the overarching message that the Supreme Court identified and listed at length in Johans apply to all the speech activities of the State Beef Councils. So are there any cases, one of the difficulties with this is we're trying to mix and match these facts with previous cases, and if they all matched, we wouldn't be here. So is there, are there any cases that hold these schemes unconstitutional, a similar scheme unconstitutional that we might look at for comparison? I'm not aware of any. I will note that. But he cited any. That's why I'm asking. Right. Yeah. No, I'm not aware of any cases that have struck down one of these commodity agricultural schemes on this basis, on the compelled subsidy basis. I would note that this can be. So let's step back. What do we have here? We have a preliminary injunction here, right? So what is my standard of review on the preliminary injunction? The standard of review for a preliminary injunction is abuse of discretion. However, legal control.  Now, just a minute. Abuse of discretion. So if the district court applies the law correctly in these particular situations and it's just then determining whether the district court is right or wrong, we're supposed to give deference to the district court as long as they apply the law correctly, correct? If they apply the law correctly. What didn't they apply the law correctly here? Because the standard that they applied for a couple of different reasons. The standard that they applied does not account for the — it does not even reference the exact same statutes and regulations that the Court considered dispositive and relevant in Johans. And this is exactly analogous to Paramount. Paramount also involved a preliminary injunction. And, in fact, the Court went out of its way on appeal to note what a careful and thorough job the district court had done in examining the record and in applying the correct standard. There, the district court also applied the effective control standard under Johans. But this Court in Paramount reversed and vacated the preliminary injunction because it found that the application of that broad effective control test was incorrect, and that was an — Well, just a minute. When I read your briefs, I do not have anything in my notes to suggest that the district court applied the wrong law. In fact, I found both parties to suggest the district court did not apply the wrong law. In fact, they — he applied the law exactly that you would apply. You just wanted to apply it differently. That's not — no. Where in your brief do you say he applied the wrong law? In our reply brief, in responding to this exact argument raised by Plaintiffs, we said that this Court should do exactly what it did in Paramount, where even though the district court had applied the broad test, that is, it invoked the correct test under Johans — They're agreeing they applied the broad test. What part of the law did they not apply? There are several instances. One, it disregarded the MOU sub salientio, which this Court — But the MOU is not in front of the district court. It was in front of it. Sure it was. Well, it depends on — I mean, the MOU comes after the — after we've already had the magistrate make a decision. And this Court — And then they put the MOU in front of them. So, okay. Is that your best, that they didn't look at the MOU? No. I was in the middle of listing a couple of others. But there's that, which this Court has said is abuse of discretion, and this Court does consider evidence submitted after a magistrate's recommendation. We pointed to several cases of that. In addition, the district court erred in applying — in reading Knox as saying that an opt-out regime is per se unconstitutional. That is a plain legal error, and that's something that this Court can — And when we get to the opt-out provisions, that's the other argument you want to make, because we're not at the opt-out yet. Oh, okay. I would say even on the government speech provision, the district court said at one point that the relevant test was statutory and legal authority, but then it said that it would need further development of the facts to assess whether or not there was effective control. And if there's further — if the basis, the correct basis for determining whether or not there's effective control is the legal authority, statutes, regulations and the like, then there would be no need for further factual development. So that part of the district court's ruling is legal error. But I would just step back and say, just as this Court did in Paramount, applying — just simply invoking the correct precedent, in this case, Johans, and then saying that's what we're going to apply here, that by itself is not enough to insulate a preliminary injunction from appellate review. Let me ask you one other question, which has bothered me. Is the decertification process subject to the same discretionary decision-making as the pre-certification — as the preapproval process? No. I mean, there's some discretion that, in the same way, determining whether or not a violation of the BFACT has occurred. But we would point the Court to, I think it's — the excerpts of record, page 59, which are in the guidelines for the BFACT itself. Those are guidelines dating back to 1990. What those say is that if a qualified State Beef Council takes any action that's not authorized by the BFACT, they are required to be decertified. So that's not, you know, a discretionary type of — The reason I'm trying to — if you're suggesting that the decertification is not subject to the discretion of the Secretary, that there are certain times when it will happen and certain times it won't. The preapproval process is really quite discretionary, is it not? I mean, I think that both of these processes are equally discretionary. Can you answer my question? I am. I'm saying I think that both processes are equally discretionary. I think that it's not a broad range of discussion. The Secretary does not have the authority to go rejecting a qualified State Beef Council that has satisfied all of the criteria any more than it could go about decertifying one that is in compliance with the BFACT. It would be subject to the APA. Those decisions would be subject to APA review? Well, the actual decertification decision, it's important to remember, occurs by the Beef Board. Right. And so let's assume I'm decertified and I'm the Montana Beef Council. Do I have the right to appeal? The decertification? Yes. I don't think there's a right to appeal in the statute. Again, that's a decision that's made by the Beef Board, which is the, you know, the entity that's, as Johan's referred to, is made up of industry members who are appointed by the Secretary. Now, the Secretary does have the power, obviously, to appoint and remove board members of the Beef Board. Of the Beef Board, exactly, which is why it exercises control over the Beef Board in overseeing the QSBCs. I can see that my time is up if there are no further questions. Thank you. Thank you. Good morning, Your Honors. David Moreskin for Plaintiffs. I think the reason the Court's having so much trouble is the government's asking for something truly extraordinary here. Through the Federal Beef Checkoff Program, the government's forcing independent domestic- Well, it's not truly extraordinary. We've had three of these cases already. Johan's went to the Supreme Court. Paramount and Delano came here. It's not truly extraordinary. The question is whether or not the program that they've constructed meets the constitutional standards. It's not like they came off the street and said for the first time, we're going to put this program together and we want a buck from you. So tell me why, under the Supreme Court's standards, given the evidence in this case, you think the district court didn't abuse its discretion. But if you want to convince me that this is an extraordinary program that I've never seen before in the history of humankind, stop. Sure. So every single case- And to be fair, unless this good colleague wants that, I don't want it either. Go to his point. Every single case, including Johan's, looked at the statutes and regulations. And that's what the government itself said should be the focus of this case. And the statutes and regulations in every single case provided for two forms of control. One, it provided for the government to be able to appoint or somehow participate in the selection of the members of the council. And, two, provided for the government to have a role in actually approving the speech. The statutes and regulations here provide for neither. Okay. So now let's come back for a second and see if you can help me. And after the magistrate judge makes his recommendation in this case, the government says, gee, if what's troubling you is that the secretary isn't exercising sufficient control over the message, we can fix that. We'll get the Montana Beef Council, one of the defendants will get together with the secretary and we'll give the secretary complete control over our message. Let's assume for the moment that that's a perfectly valid agreement between the secretary and the Montana Beef Council. Do we still have a constitutional problem? Yes, you do, for two separate reasons. One is that that control in and of itself is not sufficient. Every case has provided that the government has to have a role in appointing the members of the council. The MOU doesn't get close to that. In California, we have one member out of nine being appointed. Is that enough? That actually is not the facts of the case, Your Honor. In that case, there was one member appointed and every other member was determined by a nomination and election process that was determined by the government. And what this Court held and said was that was equivalent to appointing all the members. The government has no role. Did we really say it was equivalent or are those just the facts of the case that you're telling us? Well, those were the facts of the case and then what the Court said. Right, but we didn't say it was equivalent. No, you did. You went further. If you just let me finish, Your Honor. You went further and said at the end of that case, at the end of Paramount, you said this case is distinguishable from Johan's where half the members were appointed by the government, but that distinguishing isn't significant. That would be the micromanaging that this government is relying on so much is making the line drawing between nomination and selection process. No, I'm asking where in Delano we said the nomination and selection process was the equivalent of government appointment. It's on Paramount, Your Honor, but it's towards the end of the case where the government — where the Court says that you — there are, in fact, differences between the Paramount procedures and the Johan's procedures, but they're not significant enough to raise constitutional concerns. Those differences are that in Paramount the government was a — was nominating and choosing the election process, and in Johan's the government actually appointed. But the government in both cases had a role in actually selecting the members. But I do want to go back to your second question, Your Honor, about the MOU, which is the other problem with the MOU is it's not in the statutes and regulations. So why — why can you complain about that? In other words, here's the Montana Beef Council whose — whose discretion is being restrained by the Secretary. Well, so what standing do you have to complain about whether or not the agreement is — is provided for in the regulations? Because in effect you say you're engaging in illegal conduct, Mr. Secretary. You're sending a buck to these guys and you don't control their message. He says, well, come on in, guys. Do you think I can control your message? And they say yes. What — why do you have standing to object to that? Because the MOU could be revoked at any time because it's not in the statutes and regulations. And the entire premise of the government speech doctrine is, in fact, that there is democratic accountability. A secret ad hoc MOU — That's your separate argument that deals with the appointment of the folks. But it also goes to the MOU, Your Honor. A secret ad hoc MOU entered solely for the purposes of litigation, which is what this MOU is. It's not secret. They brought it into the district. I mean, you know, again, don't — don't get theatrical. The MOU may or may not help the other side, but it was not secret. They brought it in and put it in front of the district judge and said, here's an MOU, judge. I think we've solved your problem. But no, you haven't solved the problem because the point is that the payers across Montana should be aware about this and know who they can hold accountable. Something that's — That's the separate — that's why I'm trying to separate your arguments. There's a control argument and there's an accountability argument. So on the control side, the MOU, at least until revoked, gives the Secretary complete control over the message, does it not? It gives the Secretary control over the wording, yes. That's the speech. That's what you're arguing about. Pre-approval. That's certainly true. Which is different from decertification. It is different than decertification. Why is it different? That's the question. Because it seems to me if the Secretary — whether the Secretary can do this approval pre-promotion or whether the Secretary gets the message every time, gets to audit all he wants to, gets to do all he wants to, and if it isn't according to what the Secretary likes, decertify under the same discretion. Why is there a difference? Well, so I do want to correct a factual issue there, Your Honor. The Secretary cannot decertify in the first instance. The decertification power belongs to the Beef Board, which is not a government entity. But the Secretary is in charge for all practical purposes of the Beef Board. I mean, that's what Johans would get us to that point. I don't think that amounts to the equivalent of an appointment power. But even assuming you're hypothetical that it would be, the reason that it's — that you need to have both is what Johans says is that from beginning to end — that's the exact quote from Johans — that from beginning to end, the speech must be that of the government. We have to remember what we're — But just a minute. In this particular instance, from beginning to end, the Beef Council has got to send to the Secretary every message it's going to do. The Beef Council has got to be subject to audit. The Beef Council has got to give — answer any question the Secretary wants about the audit and about all of this message. And if the Secretary doesn't like it, decertification, just like that. Why is that any different than pre-approving the message? Well, so, Your Honor, I think that the — what you've looked at in all cases is you've had both, the appointment power and the approval power. And there's a reason for that, which is — What you're saying to me is, well, go back to the appointment power, Judge. Okay. I've got it on the appointment power. I've got your argument. We're now talking about the approval process. And what I'm saying is you need both together and for good reason, that the government speech doctrine takes speech entirely outside of the First Amendment. Once you say something is government speech, the First Amendment no longer applies. But the problem that we have with this is when I look at Johans and I look at Paramount and I look at Delano Farms, at that point, what is under the government and what isn't under the government seems to change with the case. And it seems to get broader for allowing people to do more and more without being under the government. And all we're doing is one step further in this case. But as to the message itself, that's why I'm concentrating you on it. It doesn't seem to me that that is any different whether you do it afterwards, when you know what they're going to say, you can audit whatever they're going to do, you can go through it anywhere you want, you can get rid of the beef board if you want to, and you can decertify them getting any money. Well, so I don't think — to your last point, they cannot decertify the beef board under any circumstances. But they can replace the members. No, the Montana Beef Council — No, I'm sorry. Not the Montana — the federal beef board. The federal beef board, yes. The Montana Beef Council, they can — Go back to Johans. Yes. Johans, the money goes to the secretary and it's spent by the beef board? No, it's spent by the beef committee. Spent by the beef committee. Yeah. But it's subject to the secretary's control. Correct. Can they hire an ad agency to shape the message? Can the committee hire an ad agency to shape the message? Yes, sir. And does that — that still remains government speech? If it goes through the proper procedures of the government approving the statements and — No. Okay. So, again, this — why can't we view the Montana Beef Council as an ad agency, in effect, hired by the federal beef board? It's too much beef in this case. Well, because — Sounds like McDonald's. Where's the beef? Because the government's been very frank. That's not what it is. If you look at page five of the government's brief, what they've said is that the Montana Beef Council was set up to be an independent, industry-run association that determines for itself what the speech is. If you look at the beef order in this case, the federal regulation, what they said was the government got two comments. The government claims not to be able to find these in the beef order in its briefing, but if you look at the beef order in the pages we cite, there are two separate comments. One is that you should audit these state councils more, and two is that you should review the state council's statements and actually tell them what they should be able to say. And the government says, we're not going to do that, because these are supposed to be independent, separate bodies. And that's where you get into problems with the government's speech doctrine. How could it possibly be government speech when the government's disclaiming any form of control? And what the government wants to do in this case is run away from its statutes and regulations instituted through notice and comment, which actually gives the public notice about how they can hold people democratically accountable and come up with these ad hoc agreements specifically for this case. I'm sorry. We have to go really as far as you're going, since this is a preliminary injunction. Don't we just have to say that at this point we cannot suggest that the district court was wrong in determining this is the party I think I'm going to win? These are the situations that match on a preliminary injunction, and therefore affirm? Because we're going to have a trial, right? Or a summary judgment. But yes, sir, certainly. Well, what remains to be tried? This always troubles me. And that's going to be the next. Yeah. What remains to be tried? I mean, you say that, and that's what I tried to suggest to him, the same question. What remains to be tried? Well, I think what we would like to investigate, Your Honor, is if the government is really going to rely on these extra statutory, extra regulatory controls, what they actually mean. But you say they don't matter. We say they don't matter, right? Correct. And the district court says they don't matter. District court didn't even think about it. So, I mean, we're up here on a preliminary injunction, but we're really up here on a final injunction, are we not? This is the district judge has now resolved this case. Given the district judge's view of the law, you need not put in any more evidence whatsoever to prevail, right? I think that's highly likely, Your Honor. But what the government is asking you to do on appeal, which is a very peculiar thing to do on appeal, is to reweigh actual evidence about non-statutory, non-regulatory controls. And I will say, I don't — I disagree, Your Honor, that the district court did not consider the MOU. The district court was repeatedly told by the government to ignore the MOU. If you look at the government's briefing, which we submitted in our supplemental records, excerpts of record, what they say is you need to focus on the statutory and regulatory controls. And then they say, and if that's not sufficient for you, we've got this MOU. And again, you overstayed a bit. The government didn't say ignore it. The government said we win without it. But, you know, Judge, if you're worried, take a look at this, because we surely win with it. They didn't say don't look at it at all. No. They cited Delano Farms and said — But so can you tell me — can you point to me a single place in their briefing where they say, Judge, we've put the MOU before you, but we want you to ignore it and not consider it at all? No. But I can point you to — So now I've got the problem that the district judge didn't consider it at all. Why shouldn't we just vacate the injunction and send it back to him to consider that? Well, for two separate reasons. First is that under this Court's case law, the government's original statement that the statutes and regulations control is correct, and the statutes and regulations don't provide any kind of the authority that's necessary. And the second is when the government says to the district court, the statutes and regulations control, that's, in my view, and I believe in the district court's view — But they can have no backup arguments at that point. I think — You can't say — you can't say the statutes and regulations control, Your Honor, but if you don't think that's enough to win the case, we've got — we've gotten together with the very people that these folks accuse of — accuse of being free speech people, being able to say what they want, and they've agreed that we can control their message. Now, the question is, is there such — do you face such irreparable harm at that point that the judge needs to enter a preliminary injunction? That's my — that's the — that's the way I'm — that's — I must admit, that's my major difficulty with this case. The secretary of agriculture agrees — puts in front of the court something that says whatever they're accusing us of doing — put aside the control issue, I understand that — but on the message, we'll pre-approve every message. Why do you face, under those circumstances, such irreparable harm that a — that a federal program, which extends beyond your state, must be enjoined? Well, the injunction would — is actually only for Montana. But the — Thankfully, there's no national injunction in this case, as we often see. But, again, we face irreparable harm because our constitutional right is to have actual democratic means to control and speak against the counsel. And this — But he did say, absent the control issue. But I believe that part of the — part of the control is the approval process, Your Honor. So that's got to be the critical harm, you think, is the absence of control over the counsel, not the message. No, I think there's both control over the counsel and the message, but the control for the message here is meaningless. It's going to be vacated as soon as this case is over. So let's assume that the memorandum of understanding goes on forever. Does the government have enough control? No, sir. And that's altogether with the appointment process, correct? It's — And rather than the approval of the message process. No, it's both, Your Honor. So we think that — What — what — what is that — if you put the MOU on and you have it forever, how is the control of the message not any different from what we've already approved in Paramount and Delano Farms? So for two reasons, Your Honor. One is — and we submitted this in our most recent 28-J letter. Even the government doesn't believe the MOU is enforceable. So it may go on forever, but the government doesn't actually think that it's going to enforce this MOU, and so it's not an actual form of control. I also — and under this case, this Court's case in Barnes, that kind of voluntary sensation requires an injunction from the court. So what you'd end up getting is the court entering an injunction saying the MOU needs to be enforced when the proper course, and the course under these — under this Court's doctrine is that the statutes and regulations should be in place, and that's because you want to have democratic accountability for this. You want the entire public to be aware of how they can hold and who they can hold accountable for the speech. That's not true with an MOU. Have you got any further questions? Thank you for your time. Your time has gone. I'll give you a minute. I think we took you over, too, but I'll leave. I'm being easy today. Go ahead. I appreciate that, Your Honor. If I could just respond briefly to this last point about the 28-J letter and the idea that the government doesn't think that the MOU is enforceable. The 28-J letter that Plankton submitted refers to a recent DOJ memorandum that applies to guidance documents and their use in affirmative civil enforcement proceedings. An MOU is not a generally applicable guidance document. It's an agreement with a specific party. So it doesn't — it's not within the scope of the memorandum. And even going beyond that, this is not an affirmative civil enforcement proceeding. This is one where the government is the defendant. The memo — the memorandum specifically refers to relying on a generally applicable guidance document in, like, a false claims act — action where the United States is suing on behalf of the United States. That's clearly not applicable here. So I just wanted to respond to that. I'm happy to answer any other questions the Court may have. And if not, I would just urge the Court to consider both the government speech argument as well as the absence of any compulsion here, which is, again, the source of any First Amendment violation. Thank you. Thank you. Thank you for your argument. Both good. Both of you. Very good. All right. We will then submit this case, 71735669.
judges: N.R. Smith, Hurwitz, Curiel